UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------
In re

    NATIVE WHOLESALE SUPPLY COMPANY        11-14009 B

                      Debtor                      <u>DECISION & ORDER</u>
-------------------------------------------------

                      Gross, Shuman, Brizdle & Gilfillan, P.C.
                      Robert J. Feldman, Esq., of counsel
                      Janet C. Burhyte, Esq., of counsel
                      465 Main Street, Suite 600
                      Buffalo, New York 14203
                      Attorneys for the Debtor

                      National Association of Attorneys General
                      Karen Cordry, Esq., of counsel
                      2030 M. Street, NW
                      Washington, D.C. 20036
                      Attorneys for the State of Oklahoma

                      Hodgson Russ LLP
                      Craig T. Lutterbein, Esq., of counsel
                      The Guaranty Building
                      140 Pearl Street, Suite 100
                      Buffalo, New York 14202
                      Local Counsel for the State of Oklahoma


Bucki, Chief U.S.B.J., W.D.N.Y.

     The debtor in this Chapter 11 proceeding has moved for reconsideration of the previously allowed claim of the State of Oklahoma. Central issues include whether this court can ever reconsider the results of a state court judgment, and the binding effect of a confirmed plan of reorganization.

     Native Wholesale Supply Company is a corporation chartered by the Sac and Fox Tribe of Native Americans in Oklahoma, and maintains its offices on the Seneca Cattaraugus Indian Territory in Gowanda, New York. Since 2000, the company has engaged in the business of importing the Seneca brand of cigarettes from Canada and

selling them on a wholesale basis to entities operating on lands of Indian nations and tribes within the United States. In August of 2006, Native Wholesale Supply started to distribute these cigarettes within the State of Oklahoma. However, in May of 2008, the Oklahoma Attorney General commenced an action alleging that the debtor's sale of cigarettes violated the state's Master Settlement Agreement Complementary Act. 2004 Okla. Sess. Laws, ch. 266 (codified at O.S.Supp.2004, §§ 360.1, et seq.). This statute addresses the obligations of cigarette manufacturers who did not participate in a Master Settlement Agreement between 46 states and various producers of tobacco products. Under the Complementary Act, such non-participating manufacturers are required to certify that they have fulfilled the mandate of Oklahoma law to make annual payments into an escrow account to cover health care expenses resulting from cigarette smoking. The Oklahoma Attorney General then compiles a list of cigarettes whose manufacturers have satisfied this obligation. Brands of cigarettes not included on that list are contraband that no one can legally sell or distribute in Oklahoma.

In his complaint, the Oklahoma Attorney General alleged that Native Wholesale Supply Company sold Seneca cigarettes in Oklahoma at a time when that brand was not authorized for sale. As a penalty, the Attorney General sought judgment for the gross amount of all sales made in violation of the Master Settlement Agreement Complementary Act. In June of 2009, the Oklahoma District Court granted the motion of Native Wholesale Supply to dismiss the Attorney General's complaint for lack of subject matter jurisdiction. On appeal, the Oklahoma Supreme Court reversed the dismissal and held that the Oklahoma courts retained jurisdiction even notwithstanding "the Native-American identity of the participants in the distribution channel." *State ex rel. Edmondson v. Native Wholesale Supply*, 237 P.3d 199, 217 (2010). In August of 2010, shortly after the Oklahoma Supreme Court had rendered its decision regarding the state court's subject matter jurisdiction, Native Wholesale Supply Company discontinued the sale of cigarettes

in Oklahoma. Nonetheless, on remand to the trial court, the Attorney General persisted in seeking damages for the unauthorized sale of cigarettes.

On November 21, 2011, Native Wholesale Supply Company filed the present petition for relief under Chapter 11 of the Bankruptcy Code. A dispute soon arose as to whether outstanding litigation with several states was stayed by reason of the automatic stay provisions of 11 U.S.C. § 362(a), or was allowed under 11 U.S.C. § 362(b)(4) as an exception to the automatic stay for "an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power." To resolve this issue, the states of Oklahoma, Idaho, California and New Mexico filed a joint motion for stay relief. By order dated April 26, 2012, this court ruled that to the extent that the automatic stay was applicable, relief from the automatic stay was partially granted to allow the states to proceed to a trial of their claims. However, the stay would continue to preclude the enforcement of any judgment other than through the bankruptcy process.

Upon the granting of stay relief, Oklahoma resumed the prosecution of its action against Native Wholesale Supply Company. Ultimately, on May 9, 2013, Oklahoma obtained a judgment against the debtor in the amount of $47,767,795.20 (exclusive of costs, interest and legal fees). The debtor then appealed this judgment. Simultaneously with that appeal, Native Wholesale Supply Company joined negotiations regarding the terms of a plan of reorganization. Consequently, on June 13, 2014, the debtor and the States of New York, Oklahoma and California filed an Amended Joint Consensual Plan. This plan was thereafter confirmed by order dated July 29, 2014.

The confirmed reorganization plan expressly acknowledges the outstanding judgment of Oklahoma in the principal amount of more that $47 million. *See* Am. Joint Consensual Plan of Reorganization of Native Wholesale Supply Company and the States, § 1.57 June 13, 2014 ECF 694. Section 3.1 of the Plan establishes Class 3 of allowed non-priority claims, and includes into that class "[t]he Oklahoma Prepetition Claim, if any, arising from

Prepetition sales by the Debtor, which will become an Allowed Claim, upon, and to the extent of the entry of a Final Order in the Oklahoma Litigation granting financial recovery to Oklahoma from the Debtor on account of Prepetition activities of the Debtor." Pursuant to Article 7 of the Plan, the members of Class 3 will be paid over time but in full for the amount of the members' allowed claims.

On March 2, 2015, the United States Supreme Court denied the application for a grant of certiorari to consider an appeal from the decision of the Oklahoma Supreme Court affirming the state's judgment against the debtor. *Native Wholesale Supply Company v. Oklahoma ex rel Pruitt*, __U.S.__, 135 S. Ct. 1512, *rehearing denied*, __U.S.__, 135 S.Ct. 1888 (2015). Thus, the state's judgment became final. Under the terms of the Plan of Reorganization, the debtor became obligated to make payments to the State of Oklahoma on account of the judgment. Nonetheless, the debtor has filed its present motion for reconsideration of Oklahoma's allowed claim.

In relevant part, section 502(j) of the Bankruptcy Code provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." Consistent with this provision is Bankruptcy Rule 3008, which states: "A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." The debtor here contends that the claim of Oklahoma is inequitable and should therefore be substantially modified. In particular, Native Wholesale Supply argues that the claim is based on the gross amount of sales, without any credit for the debtor's costs or for taxes paid. After these adjustments, the debtor realized less than $6.6 million dollars of profit from its Oklahoma operations. The debtor believes, therefore, that an award in excess of $47 million is grossly unfair and disproportionately punitive. The debtor blames its prior counsel in the Oklahoma litigation for a failure to present evidence of mitigation with regard to the damage award. Arguing that it should not suffer for the mistakes of its lawyers, the debtor asks that the court exercise its equitable discretion to modify the Oklahoma claim. The State of Oklahoma

disagrees, and contends primarily that the state court correctly calculated the proper amount of damages.

## Discussion

We need not here revisit the underlying basis for Oklahoma's claim, in as much as the courts of that state have issued a final order that determined its amount. That determination is binding for two independently compelling reasons. First, this court is obliged to give full faith and credit to the state court decision. Second, the debtor's confirmed plan commands payment of the Oklahoma judgment.

Upon proper authentication, judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. As the Supreme Court has recognized, "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Construction Corp.* 456 U.S. 461, 466 (1982). As a general rule, therefore, bankruptcy courts must give full faith and credit to the final judgments of state court.

The application of 28 U.S.C. § 1738 is not without exceptions. Thus, the Court of Appeals has observed that "[b]ankruptcy courts may look beyond a state court default judgment where the judgment was procured by collusion or fraud, or where the rendering court lacked jurisdiction." *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2nd Cir. 1987) (citations deleted). Also, we will excuse the extension of full faith and credit whenever "a later statute contains an express or implied partial repeal [of section 1738]." *Kremer v. Chemical Construction Corp.* 456 U.S. at 468. These exceptions, however, have no application in the present instance. The debtor here offers no factual basis for a finding of collusion or fraud in the actions of the courts of Oklahoma. Although 11 U.S.C. § 362(a) imposed an automatic stay of proceedings in state court upon the filing of the bankruptcy

petition, this court conditionally lifted that stay by order dated April 26, 2011.  Consequently, the Oklahoma court regained proper jurisdiction to render its judgment against the debtor.  Finally, neither section 502(j) nor any other provision of the Bankruptcy Code provides a basis to excuse the application of the Oklahoma judgment.

Section 502(j) of the Bankruptcy Code authorizes this court to reconsider its own order of allowance or disallowance of a claim.  However, nothing in the statute or in Bankruptcy Rule 3008 speaks to a rejection of the state court order upon which the claim is based.  If this court had previously allowed a claim for an amount based on an inaccurate reading of a state court judgment, then section 502(j) would allow this court to correct that mistake.  But here, the allowed claim of the State of Oklahoma is based on a proper reading of a final judgment to which this court must accord full faith and credit.

In deciding the present dispute, this court is bound by the decision of our Circuit Court in *Kelleran v. Andrijevic*, 825 F.2d 692 (2nd Cir. 1987).  Kelleran and an affiliated corporation had obtained a default judgment in state court with regard only to the issue of liability.  Finding "that the creditors' claims were 'wholly without merit,'" the Bankruptcy Court refused to honor that judgment.  *Id.* at 694.  The District Court affirmed this decision, but on further appeal, the Circuit Court reversed.  It concluded that "[b]ankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction."  *Id*. at 695.  Consequently, "the courts below erred in refusing to give preclusive effect to the state court judgment."  *Id.*  The facts of the instant case are even more compelling, in that Oklahoma's judgment was granted on a contested motion and became final only after the denial of certiorari by the United States Supreme Court.

The debtor's confirmed plan of reorganization establishes a separate but compelling basis to deny the motion to modify the allowed claim of the State of Oklahoma.  Section 3.1 of the Plan provides that Oklahoma's prepetition claim "will become an Allowed Claim, upon, and to the extent of the entry of a Final Order in the Oklahoma Litigation granting financial recovery to Oklahoma from the Debtor on account of Prepetition activities of the

Debtor." Now that Oklahoma has duly secured this final order, the debtor may not renege on its commitment to pay. This outcome necessarily follows from 11 U.S.C. § 1141(a), which provides in relevant part that "the provisions of a confirmed plan bind the debtor . . . and any creditor . . . , whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan." Essentially, the order of confirmation gives binding effect to the dictates of the Plan. Because the debtor's confirmed plan contemplates the payment of Oklahoma's final judgment, the debtor may not now modify the amount of Oklahoma's allowed claim.

For all of the reasons stated herein, the motion of Native Wholesale Supply Company for reconsideration of the allowed claim of the State of Oklahoma is denied.

So ordered.

Dated:     Buffalo, New York            /s/     CARL L. BUCKI
           June 16, 2016                Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.